NONPRECEDENTIAL DISPOSTION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 12, 2010
Decided June 16, 2010

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

RICHARD A. POSNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 09-2948

| | |
|---|---|
| PHILLIS DEWITT, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District |
| | of Illinois. |
| *v.* | |
| | No. 1:06-cv-01181-JBM-BGC |
| PROCTOR HOSPITAL, an Illinois | |
| not-for-profit corporation, | Joe Billy McDade, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

In the first go-around of this employment discrimination case, Phillis Dewitt alleged that Proctor Hospital terminated her employment as a registered nurse in violation of her "association" rights under the Americans with Disabilities Act (ADA), and because of her age and gender. Proctor, arguing that she did not have enough evidence to prove her claims, moved for summary judgment. While the motion was pending, Dewitt sought leave to amend her complaint and add a fourth count alleging retaliation in violation of the Employee Retirement Income Security Act (ERISA). She also filed a motion for judgment on

the pleadings. The district court granted Proctor's motion for summary judgment on all three counts, and denied Dewitt's motion to add the fourth count and her motion for judgment on the pleadings. Dewitt appealed, and we affirmed the district court's dismissal of her age and gender discrimination claims, but reversed with respect to her ADA association claim. Further, we reversed the district court's denial of her motion for leave to amend, but upheld its denial of her motion for judgment on the pleadings. *See Dewitt v. Proctor Hospital*, 517 F.3d 944 (7th Cir. 2008).

Back in the district court, Dewitt added the ERISA claim to her complaint. After eight months of discovery, Proctor again moved for summary judgment. This time, however, the hospital argued (it hinted at this during the first round) that Dewitt was fired for inappropriate, unprofessional, and disrespectful behavior. Dewitt not only opposed the summary judgment motion, but also filed a motion of her own to strike parts of an affidavit Proctor offered that went to the heart of the ADA "association" discrimination claim. The district court granted Proctor's motion and denied Dewitt's motion to strike. Dewitt appeals once again.

In September 2001, Proctor hired Dewitt to work as a nurse on an "as-needed" basis. One month later, she was promoted to second-shift clinical manager where she supervised nurses and other Proctor staff members. In the summer of 2005, she switched to part-time and shared the responsibilities of second-shift clinical manager with a coworker. In her last evaluation, her immediate supervisor, Mary Jane Davis, the Vice President of Nursing, described her as an "outstanding clinical manager [who] consistently goes the extra mile." A little later, as we shall see, Davis came to see Dewitt in a far less favorable light.

During all this time, Dewitt was experiencing difficulties at home. Her husband, Anthony, who was covered under Proctor's health insurance plan, was suffering from prostate cancer (he was first diagnosed with the condition in 1994) and receiving expensive medical care. Since Proctor was self-insured, it paid for medical costs up to $250,000. Anything above $250,000 was covered by a "stop-loss" policy issued by the Standard Security Life Insurance Company of New York.

Not surprisingly, Proctor kept a careful eye on its employee's medical expenses. In fact, each quarter the administrator of Proctor's medical plan prepared a "Stop-Loss Report" for Linda Buck, Proctor's Vice President of Human Resources, which identified all employees whose recent medical claims exceeded $25,000. These reports showed that in 2003, Anthony's medical claims were $71,684. In 2004, they increased to $177,826. In the first eight months of 2005, the expenses were $67,281.50.

At work, Dewitt frequently discussed her husband's medical condition with other employees including Davis. She also submitted a Family and Medical Leave Act request to

Davis which indicated that her husband's cancer was terminal. In September 2004, Davis asked Dewitt about the treatment Anthony was receiving. When Dewitt responded that he was receiving chemotherapy and radiation, Davis asked her if she had considered hospice care for her husband. Dewitt explained that Anthony's doctor considered hospice care at that time to be premature. Davis then told Dewitt that a committee was reviewing Anthony's unusually high medical expenses. Five months later, in February of 2005, Davis once again inquired about Anthony's condition. Dewitt informed her that it had not changed. Six months later, in August 2005, Proctor terminated her employment.

In her suit, Dewitt invoked the seldom used "association discrimination" prong of the ADA. She argued that her husband had a disability (Proctor doesn't contest the point) and that she was fired because his medical bills, growing out of the disability, were a financial burden to the hospital under its self-insured expense reimbursement plan. This, she argued, was "association discrimination" under the ADA. As the concurring opinion in our first decision notes, however, this claim might very well have been doomed from the get-go. Yet Proctor again doesn't rest its defense on the point. Instead, it says the admittedly high medical expenses incurred by Anthony didn't cause it to show Dewitt the door. The reason Dewitt was let go, says Proctor, was a conflict with her supervisor, Davis. And it's undisputed that a conflict existed. In furtherance of the conflict, it appears undisputed that Dewitt:

- Openly questioned whether she wanted to continue working at Proctor;
- Said she had philosophical differences with Davis' "management style;"
- Threatened to escalate the conflict by taking her dispute with Davis to both a VP and the CEO of the hospital; and
- Called Davis "rude and obnoxious" although she denied that she did so "loudly."

In our earlier opinion, we wrote that if "Proctor had a legitimate, nondiscriminatory reason for firing Dewitt, she would be out of luck." *Dewitt v. Proctor*, 517 F.3d at 949. This observation also holds true for the new ERISA retaliation claim.

Based on these undisputed facts, we agree with the district court that Proctor had a legitimate nondiscriminatory reason for terminating Dewitt's employment. She simply can't show that Proctor's stated reason for its action was a pretext for covering up ADA discrimination based on her association with her (most likely) disabled husband — even if that claim had legs in the first place.

Accordingly, the judgment of the district court is AFFIRMED.